UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LASONJA PORTER, | No. 2:14-cv-02984-KJM-DB |
| Plaintiff, | |
| v. | ORDER |
| CITY OF DAVIS POLICE DEPARTMENT, et al., | |
| Defendants. | |

Early one December morning in 2013, two Davis police officers suspected plaintiff Lasonja Porter might be burglarizing a car and concealing cocaine. After briefly handcuffing her to investigate, the officers learned the car was hers and the item they thought was a cocaine baggie was actually a discarded latex glove with its natural white residue. The officers then released her. The encounter, largely recorded on a dashcam, lasted less than five minutes. Plaintiff sues the two officers and the City of Davis for federal civil rights and state tort violations. Defendants have moved for summary judgment. Mot., ECF No. 44; Defs.' Mem., ECF No. 44-3. Plaintiff opposes. Opp'n, ECF No. 49. The court heard the motion on September 8, 2017. ECF No. 52. As explained below, the court GRANTS IN PART and DENIES IN PART defendants' motion.

/////

1

I.  BACKGROUND

The following facts are undisputed unless otherwise stated. Where a genuine dispute exists, the court draws reasonable inferences in plaintiff's favor. *Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014).

Soon after 1:00 a.m. on December 28, 2013, plaintiff, who is African-American, "ran over something in the streets" in her blue sports utility vehicle ("SUV"). Undisputed Material Fact ("UMF") 1, ECF No. 49-1.[1] Plaintiff pulled over to see if she had damaged her tires. UMF 2. She accidentally dropped the key for her anti-theft device, so she walked beside her car, got on her hands and knees, and used her keychain flashlight to look for it. UMF 3, 4.

Davis Police Officers Jeff Vignau and Derek Russell were patrolling the area and drove past as plaintiff was on her hands and knees looking under her parked SUV. UMF 4-5, 7. Vignau noticed movement around the parked car. UMF 8. He saw the driver's side window was down and saw a large bag inside the car. UMF 9. Given the early hour and his belief that car burglaries were common in the area, Vignau decided to investigate. UMF 11. He had not yet seen plaintiff clearly, other than the movements in her general location. UMF 10. Russell, the driver, pulled up behind the SUV and shined a spot light, which revealed plaintiff on her hands and knees looking underneath the SUV. UMF 12, 13. Vignau thought plaintiff was trying to hide, and so ordered her to stand up and walk towards them. UMF 14, 15. She complied, explaining she was merely looking for her key and it would take her a while to get up because her wrists were injured. Pl.'s Exs. B & D, ECF No. 49-2 (unpaginated excerpts of plaintiff's deposition). As plaintiff stood up, Vignau saw what looked like a baggie and a white powdery substance on the ground where she had been kneeling. UMF 16, 17, 18. Vignau thought it might be cocaine and that plaintiff may have been trying to conceal it from his view. UMF 19, 20.

/////

---

[1] For ease of reference, the court cites the statement of facts that includes plaintiff's admissions and denials, and plaintiff's additional facts. *See also* Defs.' original statement of facts, ECF No. 44-2.

2

Suspecting two possible felonies, attempted car burglary and possession of cocaine, Vignau decided to handcuff plaintiff before investigating further. UMF 21, 22. Plaintiff told the officers right away that they were hurting her wrists, and she says she felt great pain as her hands were forced upwards behind her back. Pl.'s Facts 2-3, ECF No. 49-1 at 6. After handcuffing plaintiff, Vignau picked up what he thought was a baggie. UMF 23. It turned out to be a clear latex medical glove. UMF 24. The white powder is natural to latex gloves. UMF 25. Vignau also ran the SUV through dispatch and confirmed it was registered to plaintiff. UMF 26. After the officers determined plaintiff had committed no crime, they removed the handcuffs. UMF 27. The encounter lasted less than five minutes. UMF 28. The officers turned their in-car camera on when they were handcuffing plaintiff, so their initial interactions are not on video; because the audio activates only after the camera is turned on, the first thirty seconds of the video are silent. UMF 29, 30; *see also* Defs.' Ex. A, lodged with the court on July 14, 2017, supported by Vignau's Decl. (hereinafter cited by Exhibit and Bates stamp number, "Defs.' Ex. A., Vignau-Video00001").[2]

After this interaction, plaintiff went to the emergency room because her anxiety was high and she was in pain. Pl.'s Ex. F, ECF No. 49-2 (excerpt of plaintiff's deposition). Plaintiff says her wrists and back were injured as a result of the handcuffing, but cannot recall if she received an x-ray, pain medication, or any diagnosis. *Id.* There are no medical records before the court documenting any kind of injury, as plaintiff's counsel conceded at hearing.

Plaintiff brings a § 1983 Fourth Amendment claim and an intentional infliction of emotional distress claim against Officers Russell and Vignau and the City of Davis. First Am. Compl. ("FAC"), ECF No. 9. She also brings a negligence claim against the individual officers. *See* May 8, 2017 Stipulation and Order, ECF No. 42 (dismissing several other claims listed in the operative complaint). Defendants move for summary judgment, contending the indisputable facts render no fact triable as to plaintiff's claims. Defs.' Mem. at 9-11. In addition, Officers Russell

---

[2] The court has reviewed the video itself.

| 1 | and Vignau argue they are eligible for qualified immunity. *Id.* at 13-14; Reply, ECF No. 51, at 7.
| 2 | Plaintiff has opposed summary judgment. Opp'n.

## II.    LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "there is an absence of evidence to support the [non-movant's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Then the burden shifts to the non-movant to show "there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts"). Also, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48.

In deciding summary judgment, the court draws all inferences and views all evidence in the light most favorable to the non-movant. *Matsushita*, 475 U.S. at 587-88. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-mov[ant], there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

/////
/////
/////
/////

4

III.     42 U.S.C. § 1983

To succeed on her § 1983 claim,[3] plaintiff must show that Officers Vignau and Russell, while acting under color of state law, deprived her of a federal right. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). She argues the incident on December 28, 2013, reflects a Fourth Amendment violation, because the officers lacked reasonable suspicion to detain her and used excessive force to handcuff her. As explained below, although the initial detention was a justified *Terry* stop, plaintiff's handcuffing raises triable questions on the merits, leading to a qualified immunity analysis given defendants' assertion of their immunity from liability.

A.     *Terry* Stop and Brief Detention

Plaintiff does not argue that by handcuffing her, the officers transformed her detention into an arrest; she argues only that the officers had insufficient reason to stop her in the first place. The question, therefore, is whether her brief detention, referred to as a "*Terry* stop," was justified. *See Terry v. Ohio*, 392 U.S. 1, 20 (1968). As explained below, although the stop was supported by reasonable suspicion, a reasonable juror could find the decision to handcuff plaintiff, despite her total compliance and the absence of any particularized risk to the officers, was not reasonable. The unreasonableness was also sufficiently clear such that the officers are not entitled to qualified immunity with respect to the handcuffing.

1. Triable Issues

a)     The Stop

An investigative *Terry* stop is justified when there is "reasonable suspicion to believe that criminal activity 'may be afoot.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citation omitted). An officer may form a reasonable suspicion through "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the

---

[3] Section 1983, entitled "Civil Action For Deprivation of Rights," provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

5

particular person detained is engaged in criminal activity." *United States v. Dorais*, 241 F.3d 1124, 1130 (9th Cir. 2001) (citation and quotation marks omitted). Only "a minimal level of objective justification" is required. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citation omitted). The time of night, the neighborhood, an officer's familiarity with recent criminal activity, and the officer's training and experience all are relevant to a reasonable suspicion analysis. *United States v. Mattarolo*, 209 F.3d 1153, 1157 (9th Cir. 2000).

Here, the undisputed facts support reasonable suspicion justifying the officers' conduct. Plaintiff suggests reasonable suspicion requires that the officers observe overtly criminal acts. *See* Opp'n at 4 (arguing officers saw her doing nothing other than looking for her keys, and noting no glass on ground or damage to vehicle). But that is not the test. A series of innocent individual acts can still paint a reasonably suspicious picture that criminal activity could be afoot. *Terry*, 392 U.S. at 22-23; *Wardlow*, 528 U.S. at 126 ("*Terry* accepts the risk that officers may stop innocent people. Indeed, the Fourth Amendment accepts that risk as well.").

Vignau has shown reasonable suspicion as a matter of law. He saw plaintiff on her hands and knees next to an SUV that had an open driver's side window and a large bag inside the car at 1:19 a.m. in an area where, he says, he believed car burglaries were common. UMF 8, 9, 12, 13, 14. Though the court considers Vignau's mere belief that burglaries may have been common in the area, it does not treat the "commonality of car burglaries in the City of Davis" as an undisputed fact, as this fact is reasonably disputed, unsupported by any statistics, and not subject to judicial notice, *see* Vignau Decl., ECF No. 44-5, ¶ 8 (stating, without support, burglaries are common in area); Pl.'s Response to UMF 11, ECF No. 49-1 (disputing fact based on lack of evidence); *see also* Fed. R. Evid. 201(b).

When plaintiff stood up, Vignau saw what he thought looked like a plastic baggie with a white powdery substance on the ground beside her. UMF 18, 19. Given that latex gloves are made of a form of synthetic material and coated in a powder, UMF 25, Vignau's report of what he thought he saw is not inconsistent with the record. These specific and undisputed facts supported a reasonable suspicion of two possible felonies: Possession of cocaine and attempted burglary. In scenarios such as this, where one officer obtains facts sufficient for reasonable

6

suspicion and communicates those facts to his fellow investigating officer, the knowledge is attributable to both officers under the "collective knowledge" doctrine. *See United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007); *United States v. Del Vizo*, 918 F.2d 821, 826 (9th Cir. 1990). Both officers were thus justified in their initial decision to detain and investigate plaintiff. No triable issues remain on this question.

### b) Decision to Use Handcuffs

Plaintiff also challenges whether the officers were justified in using handcuffs to detain plaintiff before their investigation, given that plaintiff complied with their orders and there was no hint of her possession of a weapon. Handcuffing is not standard in a *Terry* stop. *Washington v. Lambert*, 98 F.3d 1181, 1187 (9th Cir. 1996) ("Under ordinary circumstances, when the police have only reasonable suspicion to make an investigatory stop, drawing weapons and using handcuffs and other restraints will violate the Fourth Amendment." (citations omitted)). Intrusive means to effect a stop, such as handcuffing, are permissible only when a suspect is uncooperative, officers believe the suspect may be armed or may have just committed a violent crime, or appears about to commit crime that may involve violence, or "some combination of these factors." *Id.* at 1189. *See also United States v. Miles*, 247 F.3d 1009, 1012-13 (9th Cir. 2001) (reversing conviction, citing *Washington* for proposition that "[u]nder ordinary circumstances, drawing weapons and using handcuffs are not part of a *Terry* stop."); *Robinson v. Solano County*, 278 F.3d 1007, 1015 (9th Cir. 2002) (en banc) (in case partially affirming grant of summary judgment based on qualified immunity with respect to claim based on officer's pointing a gun at plaintiff, explaining that "[i]n cases involving investigatory or *Terry* stops, we have consistently applied the principle that drawing weapons and using handcuffs or other restraints is unreasonable in many situations.").

The Ninth Circuit has permitted handcuffing during a *Terry* stop "where the police have information that the suspect is currently armed or the stop closely follows a violent crime." *Miles*, 247 F.3d at 1013 (citation omitted). "The whole point of an investigatory stop, as the name suggests, is to allow police to *investigate*," so courts must assess whether the officers, at the time, reasonably tied the decision to use handcuffs to their investigative purpose. *Gallegos v.*

7

*City of Los Angeles*, 308 F.3d 987, 991-92 (9th Cir. 2002) (original emphasis).  In *Alexander v. Cty. of Los Angeles*, 64 F.3d 1315, 1320 (9th Cir. 1995), the court concluded officers who had reasonable suspicion to stop the plaintiffs as possible robbery suspects could also reasonably handcuff them because officers "had information that the robbery suspects had fired on a witness and thus had reason to believe the suspects were armed and dangerous[.]"  In *United States v. Jay*, 87 F. App'x 49, 50 (9th Cir. 2004), the court found the decision to handcuff the defendants "objectively consistent with a *Terry* stop," where the officer initially "was covering the situation alone, [the defendants] did not immediately comply with his orders, and Officer Santos had a reasonable suspicion [the defendants] were armed."  *Id.* (partially reversing an order granting a motion to suppress evidence).

Yet where there are no articulable facts to suggest a person poses a danger, and where no facts wed the decision to handcuff a detainee to the purpose of investigating the scene, the handcuffing is unreasonable.  *See Del Vizo*, 918 F.2d at 825 (finding "lack of an investigatory justification" for handcuffing person suspected of non-violent crime who complied with all orders and did not appear dangerous).

Here, a reasonable juror could conclude handcuffing plaintiff was unreasonable.  The officers outnumbered plaintiff; they cuffed her immediately, without asking if she had any weapons and without seeing any; they cuffed her despite her total compliance with their orders, and despite her warning that she had injured wrists; and they cuffed her without any factual basis for believing she posed a danger.  The officers purport to have handcuffed plaintiff as a precaution in the theoretical event she possessed burglary tools, UMF 21, yet the nexus between the facts of record and this justification is thin at best.  That the officers "believed" burglaries were common in the area, without support, and "believed" burglars generally tend to carry tools and weapons, does not take the reasonableness question beyond dispute.  *Washington*, 98 F.3d at 1187-89 (officers must have particularized justification based on identified factors for use of intrusive means during *Terry* stop).  Here, the officers never asked plaintiff about weapons and never patted her down once the handcuffs were applied.  A reasonable juror could find plaintiff

posed no danger, that no facts supported a reasonable belief that she might be armed, and that the officers' justifications are purely post hoc. Triable issues remain on this question.

### 2. Qualified Immunity

Although plaintiff's case presents triable issues on the merits, the officers contend they are immune from liability because handcuffing plaintiff under these circumstances was not so clearly unreasonable such that they should have to go to trial. Defs.' Mem. at 13-14; Reply at 7. Qualified immunity balances "the need to hold [officers] accountable when they exercise power irresponsibly and the need to shield [officers] from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations and quotation marks omitted). This form of immunity, the Supreme Court has said, protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (citation omitted). It shields federal and state officials from liability unless a plaintiff can show (1) the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Courts have discretion to decide the order in which they consider the two prongs. *See Pearson*, 555 U.S. at 236.

The Supreme Court recently clarified the analytical approach for the "clearly established" prong, noting, "i[n] the last five years, the Court has issued a number of opinions reversing federal courts in qualified immunity cases." *White v. Pauly*, 137 S. Ct. 548, 551 (2017). The Court recognized it was "again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality'"; instead, "the clearly established law must be 'particularized' to the facts of the case." *Id.* at 552. The Court has counseled, "[s]uch specificity is especially important in the Fourth Amendment context, where the Supreme Court has recognized that it can be difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Mullenix,* 136 S. Ct. at 308 (internal citation and quotation marks omitted). "The plaintiff bears the burden of proof that the right allegedly violated was clearly established." *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991).

9

A right is "clearly established," if under case law existing at the time of the conduct at issue, a reasonable official would have understood that what he is doing violates that right. *Mullenix*, 136 S. Ct. at 308. While "officials can still be on notice that their conduct violates established law even in novel factual circumstances," *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), "existing precedent must have placed the statutory or constitutional question beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In making its decision, a court typically should "identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the Fourth Amendment." *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017) (quoting *White*, 137 S. Ct. at 552). Even where no case is "directly on point," courts may compare relevant factors to determine whether every reasonable officer should have known the conduct in question was unlawful. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946-47 (9th Cir. 2017) (citation and quotation marks omitted). Moreover, "a right does not become clearly established only if a plaintiff has successfully enforced it through a § 1983 action." *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 398-99 (4th Cir. 2014) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Rather, a right may be clearly established by a range of sources, as long as those sources define the established law. *See, e.g., Hope*, 536 U.S. at 741 ("Arguably, the violation was so obvious that our own Eighth Amendment cases gave respondents fair warning that their conduct violated the Constitution."); *Collier v. Dickinson*, 477 F.3d 1306, 1312 (11th Cir. 2007) (statute showed right was clearly established).

In a case such as this one, general Fourth Amendment standards provide a "starting point," *Isayeva*, 872 F.3d at 947, but the court should go on to assess whether the violative nature of particular conduct is clearly established by referencing specific facts, *Mullenix*, 136 S. Ct. at 308 (citation omitted). In cases where the conduct is "obvious[ly]" unlawful, however, courts do not require a "case on all fours prohibiting that particular manifestation of unconstitutional conduct[,]" as such a requirement would permit officers to "escape responsibility for the most egregious forms of conduct[.]" *Hughes v. Kisela*, 862 F.3d 775, 783 (9th Cir. 2016).

Here, the officers' conduct occurred on December 28, 2013. For their conduct to not be shielded by qualified immunity, the court must find their decision to handcuff plaintiff to

have violated a standard that was clearly established by precedent in place at that time. The officers contend their conduct violated no such clearly established Fourth Amendment prohibitions, and plaintiff's abbreviated qualified immunity discussion identifies no analogous case law that places the officers' decision to use handcuffs here "clearly" beyond debate. Opp'n at 6-7.

Despite the shortcoming in plaintiff's analysis, the court must satisfy itself that no such precedent exists. *Cf. Estate of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1018 (9th Cir. 2017) (even though plaintiff identified no precedent on point, the "district court erred by failing to 'identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated'" the constitutional amendment at issue (citing *White*, 137 S. Ct. at 552)). The court here is not so satisfied. Ninth Circuit case law existing before December 28, 2013 drew a line that remains unbroken, identifying factors for separating reasonable action from unreasonable action in cases involving the application of handcuffs during a *Terry* stop. *See Washington*, 98 F.3d at 1187. As noted above, the Circuit clarified some time ago that handcuffing during a *Terry* stop is permissible only when a suspect is uncooperative, officers believe the suspect may be armed, or may have just committed a violent crime, or is about to commit crime that may involve violence, or "some combination of these factors." *Id.* at 1189.

The Circuit more than once has found the decision to use handcuffs during a *Terry* stop plainly unreasonable where there was no contemporaneous indicator of danger. In *Lambert*, the court denied qualified immunity in connection with the use of handcuffs during a *Terry* stop where the only significant facts offered to justify the officers' decision was that the plaintiffs were young African-American men, out together at night, and that their heights matched those of two violent suspects. *Id.* at 1193. The court deemed this an "obvious" decision under the law and "an egregious violation of the Fourth Amendment." *Id.* at 1194. In *Del Vizo*, 918 F.2d at 825, the Circuit found a "lack of an investigatory justification" for handcuffing a drug trafficking suspect during a *Terry* stop, noting the suspected crime was not emblematic of danger or violence, the suspect was compliant, and no evidence suggested the suspect was "particularly dangerous." *Id.*

11

Other Ninth Circuit cases decided before the 2013 handcuffing here reinforce the drawing of a clear line in the law separating "dangerous" *Terry* stops from the run-of-the-mill *Terry* stops in which handcuffing is impermissible. In *United States v. Bautista*, 684 F.2d 1286, 1289-90 (9th Cir. 1982), the Ninth Circuit determined that although the use of handcuffs in a *Terry* stop is the exception, it was justified initially because one suspect was behaving erratically and actively resisting arrest, the officers believed another possibly armed suspect was nearby, and one officer remained alone with multiple suspects while another officer investigated elsewhere. In *Miles*, 247 F.3d at 1013, the Ninth Circuit explained that using handcuffs during the *Terry* stop in that case was reasonable because "just minutes" before the officers discovered Miles, there were reports of shots fired just blocks away; "Miles was the first and only person" in the area that fit the suspect's description; he fit the description "in all respects"; and his proximity to two other people raised concerns for their safety and the safety of the officers, who were outnumbered.

Here, no evidence suggests plaintiff did anything that threatened the officers' safety; the officers outnumbered her; the crime she was suspected of committing was not inherently dangerous; and she was wholly compliant from the moment the officers approached her. Every reasonable officer facing this scenario would have known he could not handcuff plaintiff during this run-of-the-mill *Terry* stop without some objective and articulable basis for believing she was armed or dangerous. The existing precedent reviewed above placed this question beyond debate by the time the officers here encountered plaintiff.

The court DENIES the officers' motion for summary judgment on plaintiff's claim that the use of handcuffs rendered her *Terry* stop unreasonable under the Fourth Amendment.

B.   Excessive Force

Plaintiff also contends the officers violated her Fourth Amendment rights when they "used unreasonable force to detain [her] by pulling her hands upwards while they were behind her back." Opp'n at 5.

Courts analyze excessive force claims based on an arrest or investigatory stop under the Fourth Amendment's objective reasonableness test. *See Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003). The court asks whether the force used was "'objectively

reasonable' in light of the facts and circumstances confronting [the officers.]" *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Because excessive force cases are often fact intensive, they rarely lend themselves to summary judgment.  *Liston v. County of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury") (listing cases).  But summary judgment may be appropriate when the underlying facts are largely undisputed.  *See Scott*, 39 F.3d at 915 ("[D]efendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.").

Although the Ninth Circuit has not clearly delineated when handcuffing alone supports a Fourth Amendment excessive force claim, the Circuit has found excessive force liability where plaintiffs have proved the handcuffing caused injury or the way in which the handcuffing occurred showed the officers harbored malignant intent.  *See, e.g.*, *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) (finding excessive force where officer tightened "handcuffs so tightly around [Palmer's] wrist that they caused [him] pain and left bruises that lasted for several weeks" and where officer "refus[ed] to loosen the handcuffs after Palmer complained of the pain"); *Liiv v. City of Coeur D'Alene*, 130 F. App'x. 848, 852 (9th Cir. 2005) (explaining more generally an excessive force claim based only on handcuffing requires proof of injury or ignored requests to loosen the cuffs).

Courts in other circuits employ similarly demanding requirements for handcuff-based excessive force claims.  *See Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) ("[Plaintiff's] allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are [in]sufficient to support his claim of excessive force"); *DeToledo v. Cnty. of Suffolk*, 379 F. Supp. 2d 138, 146 n.13 (D. Mass. 2005) ("Absent evidence that the handcuffs were incorrectly applied, or were applied so as to cause physical injury, their use does not constitute excessive force.") (citations omitted); *Bur v. Gilbert*, 415 F. Supp. 335, 341 (E.D. Wis. 1976) (finding "an abrasion on [plaintiff's] wrists from the handcuffs" insufficient

for an excessive force claim; "[w]hile the law does not require that serious or permanent injuries result, the law does require that the force used be more than the mere technical 'battery'. . . .").

Here, while the record raises a question about the officer's use of handcuffs in the first place, it does not support a conclusion that the way in which they used the cuffs exceeded constitutional bounds. Plaintiff's testimony is that the officers "pull[ed] her hands upwards while they were behind her back" causing her "great pain." Opp'n at 5 (citing Porter Dep., attached as Ex. E, ECF No. 49-2, at 16-17). But there is insufficient evidence for a reasonable juror to conclude plaintiff experienced any injury or that the force used was objectively excessive or malignant. *Graham*, 490 U.S. at 395 (emphasizing the analysis is objective); *Liiv*, 130 F. App'x. at 852 (pain alone, without injury, is not enough). As noted above, the dashcam video footage begins recording as plaintiff is being handcuffed: It initially shows the officers pulling plaintiff's arms upwards behind her back once, yet the force appears minimal and plaintiff shows no signs of pain. *See* Defs.' Ex. A, VignauVideo00001. There is also no indication plaintiff ever asked the officers to remove the handcuffs. *See generally* Pl.'s Exs. A-F, ECF No. 49-2 (relevant excerpts from Porter Dep.); *Scott v. Harris*, 550 U.S. 372, 378-81 (2007) (explaining where video contradicts the plaintiff's account of events such that "no reasonable jury could have believed h[er]," a court should "view the facts in the light depicted by the videotape"). Because the dashcam recorder began recording as plaintiff was being handcuffed, the entirety of the incident relevant to plaintiff's excessive force claim appears on the videotape.

The only portion of the record indicating plaintiff suffered any injury is plaintiff's deposition testimony stating she was in pain and went to the emergency room. *See* Pl.'s Ex. F at 2. Yet she submits no medical records, has filed no proof of the emergency room visit, and she is unable to recall basic details such as whether she received an x-ray or any diagnosis. *See id.*; *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (finding summary judgment proper on excessive force claim arising from application of handcuffs where plaintiff provided no medical records to support her claim that she suffered injury as result of being handcuffed); *Weldon v. Conlee*, No. 1:13-CV-00540-LJO, 2015 WL 1811882, at *13 (E.D. Cal. Apr. 21, 2015) (same), *aff'd*, 684 F. App'x 612 (9th Cir. 2017). At hearing, plaintiff's counsel

14

conceded the record contains no medical information.  Without any medical records at all, the court need not weigh the import of the injury to plaintiff's wrists prior to this incident.  *See* Pl.'s Facts 2-3.

There is also no evidence in the record that either officer harbored any malignant intent towards plaintiff.  Although plaintiff references in her briefing a separate interaction she says she had with Vignau a month before the incident here, she provides no evidence of any kind pertaining to this prior interaction.  *See* Opp'n at 2 (citing only to the complaint's allegations as support); FAC at 3-4 (describing an alleged contact between Officer Vignau and plaintiff on November 14, 2013); *Anderson*, 477 U.S. at 259 ("a plaintiff may not, in defending against a motion for summary judgment, rest on mere allegations[.]").  Plaintiff cannot and does not withstand summary judgment by citing her complaint alone.

There is no triable issue related to plaintiff's excessive force claim.  The court GRANTS summary judgment for defendants Vignau and Russell on this claim.

C. <u>Municipal Liability</u>

Plaintiff also brings a § 1983 claim against the City of Davis.  "A government entity may not be held liable under [] § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694(1978)).  The sole constitutional deprivation at issue in this case, at this point, is the premature use of handcuffs in a routine *Terry* stop.  Accordingly, for plaintiff's § 1983 claim against the City to survive, a City policy, practice or omission must have been the "moving force" behind this specific violation.  *Id*.

Here, plaintiff has not so much as argued the existence of, no less provided any evidence to raise, a triable issue that a City policy drove the violation of her constitutional rights.  *See generally* Opp'n.  Instead, she argues the City "has refused to track or compile statistical data to track who—in regards to race—is being arrested or detained by . . . police officers," which leads officers "to unjustly detain and arrest non-whites at disproportional rates."  Opp'n at 6 (citing City Interrog. Resp. No. 22 and a 2014 state Department of Justice report indicating blacks

15

made up 15.3 percent of all felony arrests in Davis). With no evidence tying this broad accusation that a race-based policy can be inferred to the specific constitutional deprivation at issue here, plaintiff's *Monell* claim cannot survive summary judgment. *Dougherty*, 654 F.3d at 900. The court GRANTS summary judgment on this claim for the City.

IV. STATE CLAIMS

Plaintiff also brings state law claims based on the individual officers' conduct. As explained below, plaintiff's negligence claim and her claim for intentional infliction of emotional distress cannot survive summary judgment.

A. Immunity from Negligence

Plaintiff cites as negligent the decision of Vignau and Russell to handcuff her while they investigated their suspicion she was burglarizing a car and concealing cocaine. Even if their behavior is negligent, law enforcement officers are immune from liability for their discretionary decisions to investigate suspected criminal activity. *See Cal*. Gov't Code § 820.2 ("Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."). An officer's "decision to arrest, or take some protective action less drastic than arrest, is an exercise of discretion for which a peace officer may not be held liable in tort." *Green v. City of Livermore*, 117 Cal. App. 3d 82, 90 (1981) (citations omitted). Officers are similarly immune from "negligent acts committed . . . within the scope of their employment while performing actions 'incidental to the investigations of crimes' . . . ." *Johnson v. Cty. of Contra Costa*, No. C 09-01241-WHA, 2010 WL 3491425, *17 (N.D. Cal. Sept. 3, 2010) (citing Cal. Gov't Code § 821.6); *see also County of L.A. v. Superior Court*, 181 Cal. App. 4th 218, 228 (2009) ("California courts construe [this immunity] broadly to effect its purpose of protecting public employees from the threat of harassment through civil suits.").

Here, plaintiff argues only that immunity does not apply because "the officers [] used unreasonabl[e] force when detaining her[.]" Opp'n at 7. But, as analyzed above, plaintiff raises no material dispute as to the reasonableness of the force used here. And even if they were

negligent, the officers are immune from liability for their decision to approach, detain and handcuff plaintiff because each decision in this chain of events was a discretionary investigatory act committed within the scope of their official duties. Cal. Gov't Code §§ 820.2, 821.6. Because the officers are immune, the court GRANTS summary judgment for them on this claim.

### B. Intentional Infliction of Emotional Distress

Although immunity does not apply to plaintiff's intentional infliction of emotional distress claim, the claim nonetheless cannot survive summary judgment because no reasonable juror could conclude the officers here committed "extreme and outrageous" conduct that caused plaintiff "severe" or "extreme" emotional distress. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009). Conduct is "outrageous" only when it is so "extreme as to exceed all bounds of what is usually tolerated in a civilized community." *Id.* (citation and quotation marks omitted).

The totality of the record here, construed in plaintiff's favor, shows an understandably frustrating and humiliating encounter with law enforcement, but it does not reflect anything a reasonable factfinder could conclude was extreme or outrageous conduct. Demanding plaintiff submit to handcuffs and put her hands up behind her back, and turning her wrists upward while handcuffing her for less than five minutes, does not "exceed all bounds of what is usually tolerated in a civilized community," at this stage of the development of our customs and law. *Id.* at 1051. Moreover, plaintiff's counsel conceded at hearing there is no evidence as required of severe emotional distress. *Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 397 (1970) (court determines "whether on the evidence severe emotional distress can be found[.]") (citation and quotation marks omitted); *see also Love v. Motion Indus., Inc.*, 309 F. Supp. 2d 1128, 1137 (N.D. Cal. 2004) (granting summary judgment for defense on plaintiff's IIED claim where plaintiff had "not presented factual evidence supporting a finding of *severe* distress.") (original emphasis). The court GRANTS summary judgment for defendants on this claim.

/////
/////
/////
/////

V. <u>CONCLUSION</u>

As explained above, the court DENIES defendants' motion for summary judgment as to plaintiffs' § 1983 claim based on Fourth Amendment violations through the use of handcuffs in a *Terry* stop, but GRANTS summary judgment for defendants on all other claims.

This resolves ECF No. 44.

IT IS SO ORDERED.

DATED: January 25, 2018.

_____
UNITED STATES DISTRICT JUDGE